6b 147
30 371
31 287

### A. J. GARDENHIRE *v*. THE STATE.

1. JURY — PRACTICE. — Defendant is not entitled to a list of talesmen summoned to complete the jury after the exhaustion of a special *venire*.

2. SAME — PRACTICE IN THIS COURT. — Rulings of the court below in organizing a petit jury will not be revised, unless they infringed the jury law or prejudiced the rights of the accused.

3. MURDER IN THE SECOND DEGREE. — See evidence held sufficient to sustain a conviction for murder in the second degree.

APPEAL from the District Court of Tarrant.    Tried below before the Hon. J. A. CARROLL.

The indictment comprised two counts against the appellant and C. C. Gardenhire, charging them with the murder of James Parker, in the county of Tarrant, on October 16, 1877.    The first count charged that the deed was committed with a knife; the second alleged that it was done with a club.    At the August term, 1878, A. J. Gardenhire, the appellant, was separately tried, and a verdict returned convicting him of murder in the second degree, and assessing fifteen years in the penitentiary as his punishment.    The evidence was unusually concise, direct, and concurrent.

I. D. Parker, the father of the deceased, was the first witness examined by the State.    He testified that the deceased came to his death by means of blows inflicted on his head by the defendant.    The difficulty occurred at witness's farm, in Tarrant County, on or about October 11, 1877, and the deceased died on the 17th of the same month.    The defendant and his brother, C. C. Gardenhire, were tenants on witness's farm.    They owed witness some corn, and a dispute arose about the measurement of it, the day preceding the difficulty.    The next day, the defendant and his said brother brought another load of corn to pay to witness. Defendant came to the house of witness, and told witness to come out and see the corn measured.    Witness went out to the wagon, about forty yards from the house, and a dispute again arose about the measurement of the corn.    The defendant cursed and abused witness, and said he had a great mind to knock his d—d brains out, or his head off.    Witness told them that he was an old man, feeble, and not able to protect himself.    They told witness that if he wanted the corn measured he would have to have it done himself, and would have to get some one else to do it, for they would not.    After awhile, witness went into his yard and called to his two sons, Sam and James Parker, and to some hired men, all of whom were picking cotton, "Come up here, boys."    Witness then

went back, and sat down on a chunk near where the defend-
ant was.   James, Sam, and two hired men came, — James
being in front.   Witness then said that the Gardenhires had
been cursing, abusing, and threatening him, and that he
hoped there were men enough there to protect him.   James
Parker, the deceased, spoke up and said, " Yes ; they have
been treating you like a dog ever since they have been here,
and it has got to stop.   We are here."   James Parker was
then standing in his shirt-sleeves, having nothing in his
hands, and making no attack upon the defendant.   When
the deceased had so spoken, the defendant, who had been
sitting down, saying nothing, jumped up and seized a large
piece of wood, ran past witness to where the deceased was,
and first struck him a glancing lick on the side of the head,
breaking the stick, and then struck him on the back of the
head, and knocked him down.   When the defendant started
at the deceased, C. C. Gardenhire, who was at or on the
wagon, had a knife in his hands, and first said to defendant,
" Oh, don't ! " and then started at Sam Parker.   When
defendant passed witness, the latter tried to get up, but the
chunk turned, and he fell over.   Having got up as soon as
he could, some one knocked him down ; witness does not
know who did it.   Getting up again, he seized the stick
with which defendant had been striking the deceased, and
which had slipped out of defendant's hand, and tried to
strike the defendant with it, but did not hurt him.   While
this was going on, C. C. Gardenhire and Sam Parker were
struggling together.   Witness ran into the house after a
gun, but found none loaded except a shot-gun, which was
too light to do execution.   The defendant ran off.   Wit-
ness helped the deceased into the house, and dressed his
wounds, which were two stabs on the left side of the back
and two wounds on his head.   Deceased's skull was broken,
and his brains oozing out.   A few days afterwards he died.
He was in good health prior to the difficulty.

Sam Parker and James Cotton, testifying for the State,

corroborated the evidence of the first witness in every important particular, and with but slight circumstantial differences.

Dr. Barkley, for the State, said he was a practising physician, and in October, 1877, was called to see James Parker, whom he found with two flesh-wounds in the back, made with a knife, and two wounds on his head, one of which was on the back of the head. A few days afterwards he died from the effect of the wound on the back of his head. After the death of the deceased, witness discovered that his skull had been broken, which witness did not previously know. The wounds in the back were not mortal.

The defence introduced no evidence. All other matters are disclosed in the opinion. A rehearing was asked, and refused.

No brief for the appellant, on the original submission of the case, reached the reporters. *J. M. Thomason, Esq.*, moved for a rehearing, and filed an able argument with his motion.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. This is an appeal from a judgment of conviction of murder in the second degree, on an indictment which charges the appellant and another with the murder of one James Parker, in the month of October, 1877. A motion for a new trial was made on behalf of the accused, in which numerous causes are set up in support of the motion. The motion was overruled.

Several errors are assigned as reasons why the judgment should be reversed. There is but one of the supposed errors complained of to which a bill of exceptions was taken on the trial below, so far as the transcript of the record discloses. From the bill of exceptions it appears that, after the names of those summoned on the special *venire* had all

been called, and the *venire* exhausted, a jury had not been obtained, and that the court ordered the sheriff to summon additional jurors to complete the jury. The action complained of is, in effect, this, as set out in the bill of exceptions. " Said additional jurors were brought in one at a time, without furnishing defendant with a list of said jurors." It also appears that, at the time the original panel was exhausted, the defendant had had only two peremptory challenges. To this action exception was taken, for the reason, as stated, that he " should and ought to have been furnished with a list of the additional jurors summoned, before they were presented for his acceptance or rejection."

The judge signed the bill of exceptions, with this additional statement: " That the jury were brought in as summoned, and the defendant did not exhaust his peremptory challenges." It does not appear that any objection was made at the time to the manner of proceeding, or that the defendant asked to be furnished with the names of the additional jurors summoned. If he had requested a list of their names before proceeding to complete the formation of the jury, it would doubtless have been furnished him by the court. Yet, as matter of right, the law did not entitle him to, or require that he should be furnished with, a list of their names. This was expressly decided by this court in *Harris* v. *The State*, decided at the present term, *ante*, p. 97. Several questions of practice under the jury law of 1876 have been decided by this court, which see collated in *Johnson* v. *The State*, 4 Texas Ct. App. 268, with which the present ruling is in harmony, though different questions are there decided.

There is nothing in the record to show that the defendant made any objection to the proceeding *at the time it occurred*. The subject is mentioned in the motion for a new trial, which was filed on August 28, 1878, when the bill of exceptions was not filed until August 29, 1878;

so that, in point of time, so far as can be determined by the dates of filing, which are the only dates furnished by the record, the question was first raised on the motion for a new trial. It does appear that the jury was made up before the accused had exhausted his peremptory challenges, and it does not appear that any injury or prejudice to the rights of the accused was done by the action of the court in the formation of the jury. The rulings of the trial court in organizing a petit jury will not be reversed, unless they infringe the jury law or prejudice the accused. *Ray* v. *The State*, 4 Texas Ct. App. 450.

The principal grounds of complaint in the motion for a new trial, and in the assignment of errors, are general in their character, and do not point the court to the particular grounds of the objection, or to any particular rule of law or practice which has been violated; nor have they been elucidated in argument here by counsel for the appellant. Still, in a case of so much moment as the present, we feel called on to take any intimation which points to the record; and not only so, but to examine with care the whole case as shown by the record, in order to determine the merits of the case and the legality of the conviction; and with greater care, if possible, than if the appellant were represented by counsel.

In the motion for a new trial, complaint is made that the court erred in its charge as the same was given to the jury, and in refusing to give certain special instructions asked by counsel for the accused. Several other matters are mentioned which should have been presented by bills of exception. From a careful examination of the charge given, in connection with the testimony adduced on the trial, we fail to discover any error of which the appellant can justly complain. The charge as to murder in the first degree, though substantially correct, is of no moment to the accused, he not having been convicted of that degree of murder. No material error is perceived in the charge on

murder of the second degree. On the subject of man-
slaughter, and homicide in self-defence, the charge was as
full and explicit as the testimony warranted, and fairly sub-
mitted to the jury the law by which they could determine
whether the homicide was culpable at all or not, and if so,
the grade of the offence, as well as the measure of punish-
ment affixed to the different grades.

There was no necessity for the special charges, and no
error in refusing them. There was no exception properly
taken to the giving of the general charge, nor to the refusal
to give the special charges asked by the accused. The jury
were properly instructed as to the presumption of innocence
and the reasonable doubt, not only as to the general
question of guilt, but also between the different degrees,
and also as to the credibility of the witnesses. We fail to
discover any material error of commissiom or omission in
the charge of the court.

It is stated as one of the grounds for a new trial, that
the "court erred in refusing to strike out the evidence
of Dr. Barkley, for the reasons stated in the bill of excep-
tions." If this ruling was invoked, and a bill of exceptions
saved to the ruling, such bill of exceptions has not been
incorporated in the record; and unless the question is so
presented, it will not be revised on appeal. *Foster* v. *The
State*, 4 Texas Ct. App. 246. Still, on an examination of
the testimony of this witness, as set out in the statement
of facts, we fail to discover any ground for objection to its
admissibility. These are the only questions presented by
the record, deemed necessary to be noticed specially.

The testimony is clear and uncontradicted that the de-
ceased came to his death by a blow or blows inflicted upon
his head by the appellant, which broke his skull, and pro-
duced death within a few days after they were inflicted;
and there is no evidence tending to show that, at the time,
the appellant was in any immediate danger of losing his
life, or that the deceased was attempting to take, or pos-

sessed of the means of taking his life, or doing him any serious bodily injury. It is shown that, at the time he received the injury which deprived him of life, he was unarmed entirely, and not attempting any sort of violence against the appellant.

Finding no such error in the proceedings as would warrant an interference with the verdict and judgment, the judgment of the District Court is affirmed.

*Affirmed.*